**No. 25-14037**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

JOSE LOZANO JR.,

*Plaintiff-Appellant,*

*v.*

COLLIER COUNTY, FLORIDA, ET AL.

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Middle District of Florida
No. 3:25-cv-725 (Hon. Sheri Polster Chappell, U.S. District Judge)

---

## OPENING BRIEF

---

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW, Front 1 #33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant Jose Lozano Jr.*

April 6, 2026

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 and this Court's Local Rule 26.1-1, undersigned counsel makes the following disclosure of interested parties:

- Armor Health, LLC – Appellee

- Chappell, Judge Sheri Polster

- Collier County - State of Florida, Appellee

- Frazier, Magistrate Judge Douglas N.

- Lozano, Jose – Appellant

- Rambosk, Kevin – Appellee

- Rodriguez, Zinia – Appellee

- Weiss, Samuel – Counsel for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Jose Lozano Jr. does not request oral argument. The district court's error was plain, and, due to the minimal proceedings below, Defendant has not even been served to participate in oral argument. If this Court feels there are any plausible arguments that it should affirm the district court's decision, Appellant would be happy to present oral argument.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................................... ii

TABLE OF CONTENTS ..................................................................... iii

TABLE OF CITATIONS..................................................................... iv

STATEMENT OF JURISDICTION ....................................................... 1

STATEMENT OF THE ISSUES ........................................................... 1

STATEMENT OF THE CASE ............................................................. 1

SUMMARY OF THE ARGUMENT..................................................... 3

STANDARD OF REVIEW ................................................................. 3

ARGUMENT ....................................................................................... 4

    I.   Collier County is Not Entitled to Sovereign Immunity Because It Is Not a State.......................................................................................... 4

    II.  Lozano's Allegations Were Sufficient to State an ADA Claim..................... 6

CONCLUSION ................................................................................... 12

CERTIFICATE OF COMPLIANCE ................................................... 14

CERTIFICATE OF SERVICE............................................................. 15

# TABLE OF CITATIONS

**Cases**

*Armstrong v. Schwarzenegger,* 622 F.3d 1058 (9th Cir. 2010) ..............................10

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012) ...................11

*Bilal v. Geo Care, LLC*, 981 F.3d 903 (11th Cir. 2020) ..........................................4

*Cash v. Smith*, 231 F.3d 1301 (11th Cir. 2000).....................................................10

*Dukes Clothing, LLC v. Cincinnati Ins. Co.*, 35 F.4th 1322 (11th Cir. 2022) ..........3

*Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015)..............................3

*Kinard v. Fla. Dep't of Corr.*, No. 24-10359, 2024 WL 4785003 (11th Cir. Nov. 14, 2024) .................................................................................................7, 12

*Lewis v. City of Union City, Georgia*, 934 F.3d 1169 (11th Cir. 2019)...................9

*Mazzola v. Davis*, 776 F. App'x 607 (11th Cir. 2019)............................................10

*McCauley v. Georgia*, 466 F. App'x 832 (11th Cir. 2012) .......................................6

*Montanez v. Price*, 154 F.4th 127 (3d Cir. 2025)..................................................12

*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) ...........................................8

*Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) ................................................10

*Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001) ....................................................11

*Silberman v. Miami Dade Transit*, 927 F.3d 1123 (11th Cir. 2019).........................7

*Stewart v. Baldwin Cnty. Bd. of Educ.*, 908 F.2d 1499 (11th Cir. 1990) .................5

*United States v. Dieguimde*, 119 F.3d 933 (11th Cir. 1997) ...................................6

*United States v. Georgia*, 546 U.S. 151 (2006)............................................4, 5, 11

**Statutes**

28 U.S.C. § 1291 .....................................................................................................1

28 U.S.C. § 1331 .....................................................................................................1

29 U.S.C. § 794(b) .................................................................................................10

42 U.S.C. § 12101. ..................................................................................................7

42 U.S.C. § 12102 ...................................................................................................8

**Other Authorities**

28 C.F.R. § 35.108(d)...............................................................................................8

## STATEMENT OF JURISDICTION

Plaintiff-Appellant Jose Lozano Jr. appeals from a final judgment dismissing his case entered by the U.S. District Court for the Middle District of Florida on October 16, 2025. App. 25. The district court had subject-matter jurisdiction over his claims under 28 U.S.C. § 1331. In accordance with Federal Rule of Appellate Procedure 4(a), a timely notice of appeal was filed on November 7, 2025. App. 27. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.      Whether the district court erred in dismissing Lozano's disability law claim because Collier County was entitled to sovereign immunity.

II.     Whether Lozano's ADA claim otherwise stated a claim.

## STATEMENT OF THE CASE

Jose Lozano was a detainee at the Collier County Jail. App. 5. Upon entering the jail, he had a mobility impairment that required ADA housing. App. 16. A jail staff member at booking—identified in the complaint by his staff number, #2833—was aware of both his disability and his requirement of ADA housing but nonetheless sent him to general population. *Id.* #2833 acknowledged Lozano's disability but chose not to accommodate it. *Id.* Lozano required, for example, an ADA cell to be able to safely bathe because of his mobility problems. *Id.* Lozano also needed access to a medical shower, but the staff member told him he did not

1

care. *Id.* Lozano explained that in past incarcerations he had stayed in a medical pod due to his mobility impairments.

On January 9, 2022, Lozano was injured attempting to take a shower in a facility with no handrails or seat. *Id.* He had told Nurse Rodriguez that such a shower was dangerous for him. App. 17. She told him that she did not care and to get into the shower. *Id.* When he fell, she laughed at him and said "that shower kicked his ass." *Id.* Bystanders had to tell her to help Lozano rather than laughing at him. *Id.* When another nurse showed up, the nurse ordered Rodriguez away to stop disrupting the scene so that the nurse could apply an oxygen mask. App. 17–18. The injuries suffered led to multiple surgeries on his left shoulder and one on his left knee. App. 18. He has not fully recovered and is not expected to ever do so. App. 17.

Lozano filed suit *pro se*, alleging violations of the Americans with Disabilities Act (ADA) and the Eighth Amendment. App. 5. The district court screened his complaint under the Prison Litigation Reform Act, holding that his ADA claim was due for dismissal because Collier County was entitled to sovereign immunity. App. 11. Lozano amended his complaint. App. 12. The district court dismissed his ADA claim for the same reason. App. 24. Lozano timely appealed. App. 27.

2

## SUMMARY OF THE ARGUMENT

The district court erred in dismissing Lozano's ADA claim. It did so for a single reason—that Collier County was entitled to sovereign immunity. Collier County is, however, a county. It is not entitled to sovereign immunity.

Even were this Court to analyze the merits of Lozano's claim, there is no alternative basis to affirm. On a lenient, pre-service screening standard, Lozano stated a claim by alleging that he had mobility impairments that prevented him from safely bathing which jail staff ignored. If Lozano's complaint lacked enough specificity to state a claim, it was a consequence of the court's own complaint form and this Court should remand for Lozano to have a genuine opportunity for amendment.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal for failure to state a claim *de novo*. *See Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1255 (11th Cir. 2015). When reviewing a district court's dismissal, this Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Dukes Clothing, LLC v. Cincinnati Ins. Co.*, 35 F.4th 1322, 1325 (11th Cir. 2022) (quoting *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008)). Because Lozano proceeded *pro se* before the district court, his submissions to the district court must be construed "liberally" and held to "less stringent standards than

3

formal pleadings drafted by lawyers." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

**ARGUMENT**

**I.    Collier County is Not Entitled to Sovereign Immunity Because It Is Not a State.**

The district court dismissed Lozano's initial complaint on the grounds that "[p]ublic entities, including prisons and jails, can be liable for damages if they fail to make a reasonable accommodation, but only if the failure violates the Fourteenth Amendment." App. 10 (citing *Siskos v. Sec'y, Dep't of Corr.*, 817 F. App'x 760, 764 (11th Cir. 2020)). It reiterated this analysis in its second order, which dismissed Lozano's operative complaint on the sole ground that "Lozano's failure to state an Eighth Amendment claim is also fatal to his ADA claims." App. 24.

This analysis is plainly wrong twice over. The reason that *United States v. Georgia*—on which both the district court and *Siskos* relied—considered whether the plaintiff had stated an independent Eighth Amendment claim is because a state is typically entitled to sovereign immunity under the Eleventh Amendment. 546 U.S. 151, 154 (2006). If a state would otherwise be entitled to sovereign immunity, a plaintiff could only overcome the defense by showing that the state's conduct independently violated the Fourteenth Amendment, thereby abrogating the immunity. *Id.* at 158.

Collier County, however, is not a state. As this Court has explained in the context of the ADA, the Eleventh "Amendment's bar to suits in federal courts extends both to states and to state officials in appropriate circumstances, but it does not extend to counties." *Stewart v. Baldwin Cnty. Bd. of Educ.*, 908 F.2d 1499, 1509 (11th Cir. 1990). The district court's extension of the requirement of an independent Fourteenth Amendment violation to overcome sovereign immunity to a county was plainly wrong, as the county had no entitlement to the defense in the first place.

Moreover, even if county officials were entitled to sovereign immunity, the district court's opinion would still be wrong. The district court cited *Siskos* and *United States v. Georgia* for the conclusion that plaintiffs must demonstrate an accompanying constitutional violation to receive monetary damages for an ADA violation. App. 10; App. 24. *Georgia*, however, did not resolve this question in favor of states but rather explicitly left the question open. 546 U.S. at 159. The Court wrote that if the plaintiff states an accompanying Fourteenth Amendment claim,[1] as in *Georgia*, a court need not even consider sovereign immunity as a defense; if the plaintiff lacks such a claim, however, the court must consider the thorny question of whether Congress validly abrogated sovereign immunity in enacting Title II of the

---

[1] The Fourteenth Amendment's Due Process Clause incorporates the Eighth Amendment against the states. A state official's violation of the Eighth Amendment therefore is, technically speaking, a Fourteenth Amendment violation. *Georgia*, 546 U.S. at 157.

ADA. *Id.* The district court—and this Court's unpublished disposition in *Siskos*

which cited *Georgia* too—was mistaken in citing *Georgia* for a proposition that it

explicitly did not decide. *See McCauley v. Georgia*, 466 F. App'x 832, 836 (11th

Cir. 2012) (explaining that *Georgia* did not "determin[e] whether Title II validly

abrogated sovereign immunity in prisoner suits generally" but rather "merely noted"

the truism that the Fourteenth Amendment gives Congress the power to enforce

actual violations of the Amendment). In the years since, neither the Supreme Court,

this Court, nor any other federal appellate court has ever considered whether Title II

of the ADA's abrogation of sovereign immunity was valid in the context of prisons

and decided it was not. The district court erred in interpreting *Georgia* to hold

otherwise.

## II.    Lozano's Allegations Were Sufficient to State an ADA Claim.

Given that the district court's sole basis for its decision was plainly wrong,

this Court should reverse and remand for further proceedings rather than consider

additional legal questions in the first instance. *See United States v. Dieguimde*, 119

F.3d 933, 934 (11th Cir. 1997). That step is particularly appropriate here, where this

Court would be considering merits questions not only without a district court

decision but also without adversarial briefing. *See id.* ("Especially in the absence of

any party arguing in support of the district court's decision, we prefer to have the

benefit of the district court's reasoned response to such arguments in the first instance").

If this Court nonetheless chooses to reach the merits of Lozano's ADA claim in the first instance, it should hold that he has stated a claim. The ADA prohibits discrimination "against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to any discrimination by any such entity." *Id.* § 12132.

To state a claim for disability discrimination under Title II of the ADA, a plaintiff must allege that (1) he is a "qualified individual with a disability"; (2) "he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity"; and (3) "the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). "A prisoner has a claim for disability discrimination if he is denied, by reason of his disability, participation in an activity provided in a state prison." *Kinard v. Fla. Dep't of Corr.*, No. 24-10359, 2024 WL 4785003, at \*5 (11th Cir. Nov. 14, 2024).

As enacted in 1990, the ADA sets forth three ways to qualify as disabled: (1) having "a physical or mental impairment that substantially limits one or more major life activities of [the] individual"; (2) having a "record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). The standard for determining whether a plaintiff has a qualifying disability is not a demanding one. The ADA Amendments Act of 2008 (ADAAA), which governs that question, established a rule of construction that the definition of disability "shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). Additionally, the ADAAA's implementing regulations[2] reinforced the breadth of the ADAAA's definition of a qualifying disability, insisting that the "substantially limits" standard is not intended to be "demanding" but instead should be interpreted "broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 28 C.F.R. § 35.108(d). The regulations made clear that the primary analysis under ADA claims should be "whether public entities have complied with their obligations and whether discrimination has occurred" rather than "the extent to which an individual's impairment substantially limits a major life

---

[2] *See* 42 U.S.C. § 12134 (instructing the U.S. Attorney General to promulgate implementing regulations of Title II of the ADA). "Because the Department [of Justice] is the agency directed by Congress to issue regulations implementing Title II, its views warrant respect." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597-98 (1999).

activity." *Id.* An impairment constitutes a qualifying disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population," and it need not "prevent," or even "significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* Importantly, no "extensive analysis" is necessary to resolve the "threshold issue of whether an impairment substantially limits a major life activity." *Id.*

Lozano sufficiently alleged both that he had a physical impairment that substantially limited major life activities and that Defendant "regarded" him as such. First, Lozano sufficiently alleged that he had mobility impairments that substantially limited his ability to ambulate and bathe. App. 16. He required a "handicapped facility." *Id.* He also alleged that Collier County "regarded" him as having a disability when its staff member acknowledged that he needed an accessible cell and nonetheless put him in general population. *Id.*

Lozano's failure to identify the specific diagnosis that is the source of his mobility impairments is not fatal to his claim at such an early stage. What is relevant for a qualifying disability is not the formal diagnosis but the extent of the limitation on a major life activity, regardless of its source. *See Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1180 (11th Cir. 2019) (defining an "actual disability" through the severity of the limitation rather than a diagnosis).

9

The other elements of an ADA claim were plainly met. "[P]rograms, services, and activities" has an expansive meaning in the unique context of prisons, in which public entities have control over all actions of the prisoners in their charge. The Rehabilitation Act, which this Court interprets coextensively with the ADA, expressly defines "program or activity" to mean "all of the operations of … a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b); *see also Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (analyzing ADA and RA claims together because "[d]iscrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases.") In the context of prisons, "programs, services, and activities" includes virtually everything the facility offers, from dining to visitation to educational programming. *See, e.g.*, *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Armstrong v. Schwarzenegger,* 622 F.3d 1058, 1068 (9th Cir. 2010) (holding that "the fundamentals of life, such as sustenance, the use of toilet and bathing facilities, and elementary mobility and communication" inside a prison all constitute a public entity's programs or services); *Mazzola v. Davis*, 776 F. App'x 607, 611 (11th Cir. 2019) (explaining that being denied access to programs and services available to the general prison population, such as "the prison's recreational facilities, dining hall, visitation facilities, library, and commissary," constituted disability discrimination). The U.S. Supreme Court has already noted that "mobility"

10

and "hygiene" are services under Title II of the ADA, and both are at issue here. *United States v. Georgia*, 546 U.S. 151, 157 (2006).

Meaningful access requires more than being physically capable of accessing services when doing so risks injury, pain, or humiliation. "A violation of Title II … does not occur only when a disabled person is completely prevented from enjoying a service, program, or activity. The regulations specifically require that services, programs, and activities be 'readily accessible.'" *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) (quoting 28 C.F.R. § 35.150). For example, the U.S. Supreme Court's paradigmatic Title II case, *Tennessee v. Lane*, involved plaintiffs with mobility impairments who had to crawl or be carried up flights of stairs to reach the second floor of a courthouse. 541 U.S. 509, 513 (2004). No party suggested that the plaintiffs had meaningful access to the courts even though they could physically reach them by risking injury. Congress in passing the ADA enacted a broader mandate for equality. *See Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1134–35 (9th Cir. 2012) (rejecting defendant's argument that it must only provide "necessary" accommodations as that "would require very few accommodations indeed. After all, a paraplegic can enter a courthouse by dragging himself up the front steps, so lifts and ramps would not be 'necessary' … And no facility would be required to provide wheelchair-accessible doors or bathrooms, because disabled

11

individuals could be carried in litters or on the backs of their friends. That's not the world we live in.").

At the very least, Lozano should be given a genuine opportunity to amend his complaint as any failures in detail in Lozano's complaint were the consequence of him attempting to follow local rules. The district court criticized Lozano's initial complaint for being "light on factual details." App. 5. Lozano, however, was using a court-provided form that provided roughly half of a page to provide factual information to answer "What happened to you?" App. 16. Middle District of Florida Local Rule 6.04 requires him to use this form.

In *Montanez v. Price*, the Third Circuit reversed a district court that similarly provided a complaint form that artificially limited a *pro se* plaintiff's ability to state a claim. 154 F.4th 127, 152 (3d Cir. 2025). Because the "inadequacies in [the plaintiff's] pleading largely stemmed from the [court's] own procedures," the court reversed the district court and remanded to permit amendment. *Id.* The court should at least do the same here.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court and remand for service and further proceedings.


April 6, 2026



12

Respectfully Submitted,

/s/ *Samuel Weiss*
Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW, Front 1
#33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*

13

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume, typeface, and type-style requirements of Rule 32(a) of the Federal Rules of Appellate Procedure and Rule 28-1(m) of the Eleventh Circuit Rules. This brief contains 2,963 words, excluding the parts of the document exempted by Fed. R. App. 32(f), as calculated in Version 15.26 of Microsoft Word for Mac 2016. It was prepared in 14-point font using Times New Roman, a proportionally spaced typeface.


/s/ *Samuel Weiss*
Samuel Weiss

## CERTIFICATE OF SERVICE

I certify that on April 6, 2026, I electronically transmitted the foregoing brief to the Clerk of the Court using the appellate CM/ECF System, causing it to be served on counsel of record, who are all registered CM/ECF users.


/s/ *Samuel Weiss*
Samuel Weiss